IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHAMPLIN/GEI MANAGEMENT
COMPANY, INC., a Delaware
Corporation,

Civ. No.: 3:12-cv-00489-AC

Plaintiff,

FINDINGS AND
RECOMMENDATION

v.

DARIN HUSEBY, an individual,

Defendant.

ACOSTA, Magistrate Judge:

*Introduction*

On March 16, 2012, Plaintiff Champlin/GEI Management Company, Inc., ("Champlin"),
filed an action against Defendant Darin Huseby ("Huseby") seeking a temporary restraining
order ("TRO") and permanent injunction to prevent breach of contract and violations of
California trade secret laws.  The action also sought reasonable costs and attorney fees, and
invoked this court's diversity jurisdiction under 28 U.S.C. § 1332.

After hearing oral argument on March 19, 2012, District Judge Mosman denied the motion for a TRO.[1]  On March 27, 2012, Huseby filed this motion for attorney fees, seeking the sum of $13,332 under California Civil Code § 1717 ("Section 1717").  On April 10, 2012, Champlin filed a Notice of Voluntary Dismissal, and on April 13, 2012, filed its opposition to the motion for attorney fees.  For the reasons that follow, the motion for attorney fees should be granted and fees and costs awarded in the amount of $13,341.35.

*Background*

Champlin and Huseby entered into a Confidentiality Agreement ("Agreement") on March 8, 2011.  (Huseby Second Declaration ("Huseby II") (Dkt. No. #21).)  Champlin is a wind energy development company with its principal place of business in Santa Barbara, California. (Cutbirth Amended Declaration ("Cutbirth Amended") (Dkt. No. #14) ¶ 2.)  Huseby began his employment with Champlin as its Vice President of Development on or around May 1, 2011. (Huseby First Declaration ("Huseby I") (Dkt. No. #8), Ex. 1 at 1, 3.)  Champlin terminated Huseby's employment on March 6, 2012.  (Huseby I, Ex. 2 at 1.)  While employed with Champlin, Huseby used his personal computer to perform company business from his home office in Portland, Oregon.  (Huseby I ¶ 4.)

Champlin alleges that Cedar City Wind Holdings, LLC ("CCWH"), Champlin's affiliate, was formed in order to facilitate a purchase of the Blue Mountain Wind Energy Project ("the Project").[2]  (Cutbirth Amended ¶¶ 2, 13.)  CCWH entered into an "Asset Purchase Agreement" on February 17, 2012, with the bankruptcy trustee of Renewable Energy Development

---

[1] The permanent injunction was not addressed at hearing.

[2] The State of Delaware Department of State: Division of Corporations registry shows that CCWH was actually formed on October 18, 2010, prior to Huseby's employment with Champlin.  Even so, Champlin alleges that it was not made aware of the Project opportunity until January 9, 2012.  (Cutbirth Supplement ¶ 2.)  This discrepancy does not impact the court's analysis, however.

Corporation ("REDCO") for the assets related to the Project.    (Cutbirth First Declaration ("Cutbirth I") (Dkt. No. #16), Ex. 2 at 1.)

Champlin discovered that Huseby planned to bid on the Project, and on March 16, 2012, filed a complaint against Huseby captioned, **COMPLAINT** (Request for Temporary Restraining Order and Permanent Injunction to Prevent Breach of Contract and Violation of California's Trade Secrets Act." (Complaint at 1.) Champlin's complaint contained a single claim for injunctive relief against Huseby. Champlin also filed on the same day its motion for a temporary restraining order to prevent Huseby from bidding at the auction for REDCO's assets. Champlin argued that if Huseby was not restrained from bidding on the Project, it would be harmed and that money damages would not adequately compensate for the harms done to it and to CCWH. (Cutbirth Amended ¶ 19.) Huseby countered that granting the TRO would cause him extreme hardship including substantial income loss, a tarnished reputation, and damaged relationships. (Huseby I ¶ 19.)

Champlin based its request for injunctive relief on the Agreement's Section 7, entitled "Remedies." In relevant part, that section gives Champlin the "right to apply to any court of competent jurisdiction for a restraining order or an injunction restraining or enjoining any breach or threatened breach of this Agreement[.]" ((Huseby II), Ex. 1 at 3.) Section 7 gives no reciprocal right to seek equitable relief in court to Huseby, and nowhere else in the Agreement is Huseby provided a right to go to court regarding the Agreement. Section 7 is separate from Section 8 of the Agreement, entitled "Miscellaneous," which requires both parties to submit to binding arbitration any other "dispute between the parties arising out of this Agreement." (Huseby II, Ex. 1 at 3.)

Judge Mosman heard oral arguments on Champlin's TRO on March 19, 2012. (Official Court Transcript of Temporary Restraining Order (Dkt. No. #23) ("Transcript") at 1.) Judge Mosman denied the TRO, finding Champlin had not demonstrated it would suffer irreparable harm, thus failing to meet the second prong of its two-prong burden for obtaining a TRO. (Transcript at 28-29.) Judge Mosman noted that his comments were "not intended to be any permanent statement of the merits of the case" and that he left "completely unresolved the question of who should prevail on the merits for any permanent purpose." (*Id.* at 29-30.)

Following the denial of the TRO, both parties attended the auction for the Project on March 21, 2012. Champlin's $210,000 bid prevailed, an amount $197,000 higher than Champlin's original $13,000 bid. (Sands Declaration ("Sands Decl.") (Dkt. No. #26) ¶ 2.)

On March 27, 2012, Huseby filed this motion for attorney fees. Although Champlin's attorneys had previously indicated that they intended to file arbitration proceedings to recover expenses incurred as a result of Huseby's alleged breach of the Agreement, Champlin did not file its Demand for Arbitration with the American Arbitration Association until March 30, 2012. (Sands Decl. ¶ 2.) On April 10, 2012, Champlin filed a Notice of Voluntary Dismissal of its initial Complaint.

## Discussion

I.    Entitlement to Attorney Fees

A.    *Choice of Law*

Section 8 of the Agreement specifies California law shall apply to disputes submitted to arbitration, but Section 7 contains no such stipulation regarding Champlin's right to bring a TRO motion against Huseby. (Huseby II, Ex. 1 at 3.) In fact, Section 7 is silent on the law to be

applied to a TRO motion. Thus, the court first determines which jurisdiction's law governs Huseby's motion for attorney fees incurred in defending Champlin's failed TRO motion.

A federal district court exercising diversity jurisdiction is required to apply the substantive law of the state in which it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938). As attorney fees are a matter of substantive law for diversity purposes, federal courts apply state law in determining whether to award attorney fees in a contract action. *Ford v. Baroff,* 105 F.3d 439, 442 (9th Cir. 1997). Generally, Oregon courts enforce contractual choice of law provisions. *See CACV of Colorado, LLC v. Stevens,* 248 Or. App. 624, 645 (2012) (noting the "fundamental premise under Oregon law that the intent of the parties to a contract controls a court's interpretation of it").

The Agreement evidences the parties' intent that California law govern the "validity, interpretation, and performance" of their agreement. (Huseby II, Ex. 1 at 3.) Both parties relied on California law in their briefing on Champlin's TRO motion, and both parties' briefing on the attorney fee issue similarly use California law to support their respective positions. Accordingly, this court will look to California law to determine whether Huseby is entitled to attorney fees.

B.    *Prevailing Party and Timeliness*

Under California law, Section 1717 is the applicable statute when determining whether and how attorney fees should be awarded under a contract. *Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1157 (1988). Section 1717 provides, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be *the party prevailing on the contract,* whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a) (emphasis added). The statute further provides:

Page 5- FINDINGS AND RECOMMENDATION                                *{AGI}*

> The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, *whether or not the suit proceeds to final judgment.* . . . [T]he party prevailing on the contract shall be the party who recovered greater relief in the action on the contract.

Cal. Civ. Code § 1717(b)(1) (emphasis added). The court may also decide there is no prevailing party on the contract. *Id.* Furthermore, "[w]here an action has been voluntarily dismissed[,] . . . there shall be no prevailing party for purposes of this section." *Id.* § 1717(b)(2).

Huseby contends that, having defeated Champlin's TRO, he is entitled to attorney fees under Section 1717(a) as the prevailing party. Champlin responds that the merits of the parties' dispute have not yet been heard, thus there is no "prevailing party" under Section 1717, and therefore a petition for attorney fees is premature. Champlin alternatively argues that since it voluntarily dismissed its complaint against Huseby, no attorney fees should be awarded under Section 1717. The parties do not dispute that this is "an action on a contract" and, thus, Section 1717 applies.

In determining whether there is a "party prevailing on the contract, the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Hsu v. Abbara,* 891 P.2d 804, 813 (Cal. 1995). This determination is to be made only upon final resolution of the contract claims and only by a "comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions." *Id.* Substance rather than form should be respected, and to this extent the trial court should be guided by equitable considerations. *Id.* In other words, "status as the 'party prevailing on the contract' is ascertained not by technicalities of pleading and procedure but by a pragmatic assessment of the parties' ultimate positions vis-à-vis their litigation objectives as

reflected in pleadings, prayers and arguments." *Estate of Drummond*, 149 Cal. App. 4th 46, 51 (2007) ("*Drummond*").

In evaluating a trial court's discretion to deny fees under Section 1717(b)(1), the California Supreme Court stated in *Hsu*: "when a defendant obtains a simple, unqualified victory by defeating the only contract claim in the action, [S]ection 1717 entitles the successful defendant to recover reasonable attorney fees incurred in defense of that claim if the contract contained a provision for attorney fees." *Hsu*, 891 P.2d at 814. The *Hsu* court concluded that the legislative intent of Section 1717 was to award a party clearly prevailing on the contract attorney fees "as a matter of right" and that, as such, a trial court lacks the discretion to deny such fee requests. *Id.* at 872.

In order to be the "party prevailing on the contract," there is no requirement that a final judgment be reached. *Profit Concepts Management, Inc. v. Griffith,* 162 Cal. App. 4th 950, 954 (2008). In *Profit Concepts*, a California-based company sued its former employee for breach of contract. The defendant employee successfully filed a motion to quash for lack of personal jurisdiction. The appellate court affirmed the lower court's ruling and held that the employee prevailed on the contract and was entitled to attorney fees under Section 1717. Even though the plaintiff had initiated an action in another forum and the case had not yet been heard on the merits, the court still found the defendant had prevailed on the contract in the matter before it. The court stated, "We find nothing in the language of the statute or of *Hsu v. Abbara,* or any other case, that requires resolution in another state on the merits of a contract claim first asserted in California before a prevailing party can be determined here, when the matter has been completely resolved vis-à-vis the California courts." *Id.* at 956.

In *Otay River Constructors v. San Diego Expressway*, 158 Cal. App. 4th 796 (2008), after the trial court had denied the attorney fee motion to the party who had successfully defended a motion to compel arbitration, the California Court of Appeals reversed. In response to the argument that an interim procedural victory does not create a prevailing party subject to attorney fees, the court stated, "courts have awarded attorney fees to a party obtaining an appealable order or judgment in a discrete legal proceeding even though the underlying litigation on the merits was not final." *Id*. at 807 (citation omitted). The merits of the contract claims were not at issue in the court proceedings to compel arbitration, and even though the parties probably would pursue those claims in a further action, that did not lessen the victory in that discrete legal action. *Id*. at 808. The court found that the party who had successfully defended the motion to compel arbitration, the singular contract claim at issue, was the prevailing party and therefore entitled to Section 1717 attorney fees. *Id*. at 807.

Similarly, in *Turner v. Schultz*, 175 Cal. App. 4th 974 (2009), the California Court of Appeals adopted *Otay River*'s reasoning and affirmed an award of attorney fees to a party who was successful in compelling arbitration. The court rejected Turner's argument that the prevailing party could not be determined "until after the final resolution of the underlying dispute – that is, until after the arbitration is complete." *Id*. at 979. The court concluded that fees under Section 1717 are properly awarded "to the extent that the action in fact is an action to enforce – or avoid enforcement of – the specific contract." *Id*. at 980 (quoting *Shadoan v. World Savings & Loan Assn.*, 219 Cal. App. 3d 97, 108 (1990)).

For two reasons, the court concludes attorney fees are awardable here. First, the reasoning of the decisions of the California Courts of Appeals is persuasive. When evaluating claims governed by California law, this court must "sit in the same posture as the [California]

state court and there should be no different result in the federal proceedings than would have been achieved in the state court proceeding." *Tucker v. First Maryland Savings & Loan, Inc.*, 942 F.2d 1401, 1406 (9th Cir. 1991). By and large, the consensus of the California Courts of Appeals is to award attorney fees in discrete contractual actions even if the merits of the underlying dispute have yet to be heard.

Second, a merits decision here did occur when Judge Mosman denied Champlin's motion for a TRO. Section 7 of the Agreement gives Champlin the right to seek a TRO in court to enjoin a threatened breach of the Agreement, and Champlin exercised that right. Judge Mosman found Champlin failed to meet the second prong of the TRO burden, that it would suffer irreparable harm from the threatened breach. In attempting to exercise this separate contractual right, Champlin lost on the merits of the facts it offered to support its request to obtain that right.

Thus, although Champlin correctly observes that a TRO ruling is not a determination on the merits of the parties' underlying dispute of whether Huseby retained proprietary information, Champlin overlooks that Judge Mosman's decision was a determination of the merits of Champlin's contractual right to obtain a TRO against Huseby. Important to the analysis here, the TRO was the only issue Champlin's lawsuit raised, an issue based on a stand-alone right bestowed by Section 7 of the Agreement and separate from any right under Section 8 Champlin could have sought or currently seeks in arbitration. Consequently, Huseby's attorney fee motion follows a decision on the merits of this contractual right, and thus, Huseby is deemed the prevailing party.

C.    *Application to the Contract*

The contract between Huseby and Champlin at issue here is a confidentiality agreement. It contains two provisions pertinent to the issues before the court. Paragraph 7 provides in part:

> Remedies. . . . Recipient agrees that, notwithstanding the arbitration provision set
> forth below, the Company shall have the right to apply to any court of competent
> jurisdiction for a restraining order or an injunction restraining or enjoining any
> breach or threatened breach of this Agreement and for any other equitable relief
> the Company deems appropriate . . . This right shall be in addition to any other
> remedy available to the Company in law or equity.

(Huseby I, Ex. 3 at ¶ 7.)

Paragraph 8 provides in part:

> Miscellaneous.   The validity, interpretation, enforceability and performance of
> this Agreement shall be governed by and construed in accordance with the laws of
> the State of California. . . . Any dispute between the parties arising out of this
> Agreement shall be settled by mandatory binding arbitration, which shall be held
> in Santa Barbara, California pursuant to the commercial arbitration rules of the
> American Arbitration Association. *In the event of any dispute concerning the
> respective rights and obligations of the parties under this Agreement, the
> prevailing party shall be entitled to receive from the other party reasonable
> expenses, attorneys' fees, and costs.*

(*Id.* at ¶ 8) (emphasis added).

In determining the prevailing party, the court is to "compare the relief awarded on the
contract claim or claims with the parties' demands on those same claims and their litigation
objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources."
*Hsu*, 891 P.2d at 813.   The record discloses that the single goal of Champlin's lawsuit was to
prevent Huseby from bidding at the March 21, 2012, auction.   Champlin failed to achieve that
goal as Huseby prevented Champlin from doing so.   Put plainly, Huseby won.

That other issues existed between the parties, such as Huseby's alleged retention and use
of Champlin's proprietary information in violation of the contract, does not change the analysis
that Huseby is the prevailing party in this lawsuit.   First, when there are multiple issues in a case,
yet one in particular is more important to the parties than the others, the court is to give most
credence to the main objective of the parties in determining Section 1717 attorney fees.   *See
Silver Creek, LLC v. Blackrock Realty Advisors, Inc.*, 173 Cal. App. 4th 1533, 1540 (2009).

Page 10- FINDINGS AND RECOMMENDATION                                    *{AGI}*

Champlin might have been concerned that Huseby allegedly retained its proprietary information in violation of contract, but Champlin's main focus in this lawsuit was to keep Huseby from bidding at the March 21, 2012, auction. Judge Mosman ruled on the merits of that claim; that he did not rule on the merits of Champlin's underlying allegations – and that he expressly admonished the parties not to use his statements at oral argument for any purpose related to the merits of those underlying allegations – does not change that Champlin's main focus was its attempt to prevent Huseby from bidding.

Second, even if prevailing on the merits were necessary to be a prevailing party for purposes of Section 1717 attorney fees, Huseby would still meet the requirements. As previously noted, Huseby prevailed on the merits of Champlin's TRO motion. Although there are no Section 1717 California cases that deal directly with whether prevailing on a TRO is sufficient to achieve prevailing party status, persuasive Ninth Circuit case law suggests that by obtaining a preliminary injunction, a party can prevail on the merits of at least some of their claims by obtaining the relief the party sought. *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980). It is likely that California courts faced with that issue would find a party prevailing on a TRO to be "the party prevailing on the contract" under similar circumstances, especially when, as here, those circumstances involve an attempt to invoke an express contractual right to obtain a TRO in court.

Champlin argues that attorney fees cannot be awarded until the merits of the arbitration action are decided. Yet, Champlin also requested its own attorney fees in its initial complaint in this court. (Complaint (Dkt. No. #1) at 7.) Champlin agreed under Section 8 of the Agreement that in "any dispute concerning the respective rights and obligations of the parties under this Agreement, the prevailing party shall be entitled to receive from the other party reasonable

expenses, attorneys' fees, and costs." Champlin's complaint made clear its position under the contract that if it prevailed, it was entitled to receive attorney fees. The same contractual right applies to Huseby's attorney fee request here and also serves one of the key purposes of Section 1717, which "was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party, and to prevent oppressive use of one-sided attorney's fees provisions." *Hsu,* 891 P.2d at 809 (citations omitted). Huseby prevailed, and he is entitled to his attorney fees under Section 1717.

D.    *Effect of Voluntary Dismissal*

Champlin argues Huseby cannot recover attorney fees because it has voluntarily dismissed its case and, thus, Huseby has not "prevailed." First, as in *Profit Concepts,* there were two separate proceedings -- one in this court filed on March 16, 2012, and a separate arbitration proceeding filed in Santa Barbara, California, on March 30, 2012. (Sands Decl. ¶ 2.) Unlike the improper forum issues discussed in *Drummond,* Champlin's lawsuit arises from its separate contractual right to apply for a restraining order to enjoin what it considered to be a threatened breach of the Agreement. The issue in this lawsuit – whether Huseby should be enjoined from bidding at the March 21, 2012, auction – was completely independent of the issues later raised in the arbitration proceeding Champlin filed in California eleven days after Judge Mosman denied Champlin's TRO motion.

Second, Section 1717(b)(2) applies when an "action" has been voluntarily dismissed. In *CDF Firefighters v. Maldonado,* 200 Cal.App.4th 158, 165-166 (2011), the California Court of Appeals researched the definitions of the term "action" for purposes of applying Section 1717. The court looked to Section 22 of the California Code of Civil Procedure defining "action" as a "proceeding in a court of justice by which one party prosecutes another for the declaration,

enforcement, or protection of a right . . . ." and to the California Supreme Court's definition in *Frost v. Witter*, 132 Cal. 421, 426 (1901):

> The latter term [action] is very commonly confounded with the suit (litis) in which the action is enforced. But this is not the technical meaning of the term, according to which an action is simply the right or power to enforce an obligation. "An action is nothing else than the right or power of prosecuting in a judicial proceeding what is owed to one,"— which is but to say, an obligation. . . .  The action therefore springs from the obligation, and hence the "cause of action" is simply the obligation.

The *CDF Firefighters* court applied those definitions to find that, although the plaintiff voluntarily dismissed one action with no prevailing party, another action had already been finally adjudicated rendering the defendant entitled to Section 1717 attorney fees on the adjudicated action. 200 Cal. App. 4th at 166-167.

As in *CDF Firefighters*, Champlin's TRO motion sought injunctive relief from a court, in the form of an initial TRO and then a permanent injunction. As such, when Champlin filed a Notice of Voluntary Dismissal on April 10, 2012, there was no prevailing party on the permanent injunction claim. However, at that time, the TRO action had been finally adjudicated in Huseby's favor through Judge Mosman's ruling at the March 19, 2012, hearing. "Since action is not synonymous with complaint, [Champlin's] dismissal of the balance of its complaint, a complaint based on two separate obligations, was not a dismissal of the separate action on the TRO." *Id.* at 166. Therefore, Section 1717(b)(2) does not bar Huseby from recovering attorney fees in defending the TRO.

Moreover, the policies behind Section 1717(b)(2) of encouraging settlement and discouraging the maintenance of pointless litigation, would not be served in disallowing Huseby to recover after tenaciously defending the TRO motion. *Id.* In addition, Champlin's voluntary dismissal was not filed until two weeks after Huseby's motion for attorney fees was filed and even longer still after Huseby prevailed on Champlin's TRO motion. Allowing Champlin to

avoid paying attorney fees by dismissing its claims – claims it effectively already had lost – would enable it to circumvent the attorney fee provision of the Agreement. This would be contrary to the policies of the California legislature in enacting Section 1717 and deprive Huseby of his contractual right under the Agreement.

In summary, Huseby is the prevailing party on the contract for purposes of Section 1717(a). The subsequent voluntary dismissal filed by Champlin does not defeat Huseby's entitlement to attorney fees under Section 1717(b).

II.    Amount of Attorney Fees

The parties dispute the amount of attorney fees to be awarded. Huseby seeks fees of $13,332. This total includes $5,715 (25.4 hours x $225/hour) in fees for Kotori; $441 (2.1 hours x $210/hour) in fees for Love-Geiger; and $7,176 (27.6 hours x $260/hour) in fees for Hardwick. Champlin does not challenge the hourly rates of Huseby's attorneys, but instead claims that attorney fees should be denied due to excessive block billing.

A.    *Choice of Law*

Section 1717(a) provides, "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." Few courts outside California have decided Section 1717 cases or awarded attorney fees under the California civil code provision. In one district court's determination of the amount of fees to award in a Section 1717 diversity case, the District of Utah applied California law to both whether attorney fees were warranted and to the amount of fees to award. *Chevron Pipe Line Co. v. Pointe Perry, LC*, No. 2:08-cv-981 CW, 2011 WL 4565767 (D. Utah Sept. 29, 2011). The District of Kansas also applied California law to the amount of fees to award when it decided to award attorney fees under Section 1717.[3] *Payless*

---

[3] As the contract at issue in *Payless Shoe Source, Inc.* contained a choice-of-law provision to apply the law "where the premises are located," the Kansas court applied Nevada law to the issue

*Shoe Source, Inc. v. W/J Commercial Venture, L.P.*, No. 10-4156-KGS, 2012 WL 3245450 (D. Kan. Aug. 8, 2012). The court has discovered no cases that found Section 1717 attorney fees to be merited under California law, yet applied another state's law when calculating what amount to award. In fact, one sister circuit and California courts have held explicitly that, "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002); *Altman v. PNC Mortg.*, 850 F.Supp.2d 1057, 1086 (E.D. Cal. 2012). The Ninth Circuit, although not as explicitly, tends to apply the same philosophy. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) (party waived viable argument to apply North Carolina law to award of attorney fees as per the choice-of-law provision agreed to by the parties by not raising the issue until appeal); *Stokes v. Reeves*, 245 F.2d 700 (9th Cir. 1957) (holding that Texas statute would apply to attorney fees in diversity suit in the District of Montana if the district court agrees on remand that the claims arose out of Texas as the Ninth Circuit found). As such, because California state law applies to the determination of whether Section 1717 attorney fees are warranted, it also governs the calculation of the attorney fee award.

B.    *Legal Standard*

Under California law, the trial court has broad authority to determine the amount of a reasonable fee. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (Cal. 2000). The fee-setting inquiry ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. *Id.* The reasonable hourly rate is that prevailing in the community for similar work. *Id.* (citing *Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1004 (1982)).

---

of the Nevada property and California law to the issue of the California property. The attorney fee issue for the California property was analyzed under Section 1717.

The lodestar calculation does not end the analysis. The court may adjust the lodestar upward or downward to fix the fee at the fair market value for the provided legal services, where appropriate, based on the following factors: (i) the nature and difficulty of the litigation; (ii) amount of money involved; (iii) skill required and employed to handle the case; (iii) the attention given; (iv) the success or failure; and (v) other circumstances in the case. *Id.* at 1096. Other considerations include the likelihood that the litigation precluded other employment by the attorneys and any additional factors that may be relevant. *Id.* at 1095; *Serrano v. Priest*, 20 Cal. 3d 25, 49 (Cal. 1977). The application of a lodestar multiplier is discretionary after the consideration of the relevant factors in the case. *Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1240 (2007).

      C.    *Lodestar Calculation*

          1.    <u>Hourly Rate</u>

Champlin does not dispute Huseby's attorneys' hourly rates. Under California law, the appropriate attorney fee rates are determined by that prevailing in the community where the legal work takes place. *PLCM Group*, 22 Cal. 4th at 1095. This District has a long-established practice of analyzing rates using the Oregon State Bar's Economic Survey. *See* District of Oregon Local Rule of Civil Procedure 54-3; "Message from the Court Regarding Fee Petitions," Available at: http://ord.uscourts.gov/en/court-policies/message-from-the-court-regarding-fee-petitions (last visited November 6, 2012). The best evidence of the prevailing rate in Portland, Oregon for this year, is the 2012 Economic Survey ("Economic Survey") conducted by the

Oregon State Bar. *See, e.g., Roberts v. Interstate Distributor Co.*, 242 F. Supp. 2d 850, 857

(D.Or. 2002) (referencing 2002 Economic Survey). [4]

The pertinent hourly wage data for attorneys in private practice based on years of practice

in Portland as set forth in the Economic Survey are summarized below:

| Years | Average | 25th Percentile | 75th Percentile | 95th Percentile |
|-------|---------|-----------------|-----------------|-----------------|
| 0-3   | $182    | $163            | $198            | $246            |
| 4-6   | $210    | $160            | $250            | $295            |
| 7-9   | $258    | $225            | $295            | $375            |
| 10-12 | $280    | $233            | $300            | $428            |
| 13-15 | $312    | $261            | $379            | $435            |

Kotori has been practicing law since 2007.  The hourly rate Huseby seeks for her time of

$225 falls between the 25th and 75th percentiles for an attorney with 4-6 years of experience,

and Champlin does not dispute that this rate is reasonable.  Hardwick has been practicing law

since 2005.  The hourly rate Huseby seeks for her time of $260 falls between the 25th and 75th

percentiles for an attorney with 7-9 years of experience.  Champlin also does not dispute that this

rate is reasonable.  Love-Geiger has been practicing law since 2009.  His hourly rate of $210

falls above the 75th percentile of attorneys with 0-3 years of experience, but he has practiced for

3 years, is at the upper edge of the years of practice bracket, and Champlin does not dispute the

reasonableness of this rate.  Accordingly, the court finds the hourly rate claimed by each attorney

to be reasonable.

2.    Number of Hours

Although Champlin does not dispute the number of hours Huseby's attorneys spent on

this case, it does challenge the time records as being inadequate due to block billing.  (Pl.'s

---

[4]  The Economic Survey can be found at
http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited
November 6, 2012).

Response in Opp. To Def's Motion for Attorney Fees (Dkt. No. #25) at 11-12). Champlin argues that the block billing makes it impossible to determine what work Huseby's attorneys actually did, to what claims the issues relate, and how much time was spent on each task. *Id.* at 12. California courts do not find block billing to be objectionable, per se. *Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1325 (2008). However, since the burden of proving entitlement to fees rests on the moving party, California courts counsel that the use of block billing can be risky and potentially lead to a reduction in fees due to vagueness. *Id.*; *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 830 (2011). The trial court may reduce compensation on account of any failure by counsel to maintain appropriate records. *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001). That said, the California Court of Appeals has stated, "We think the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005).

Huseby's attorney fee request involves a single discrete project, responding to Champlin's TRO motion. Furthermore, all the activity for which fees are sought occurred between March 16, 2012, the date Champlin filed and served its TRO motion, and March 19, 2012, the day of the hearing on that motion. The time records Huseby's attorneys submitted show a variety of activities all focused on preparing and filing Huseby's response to the TRO motion. The compressed time period, the single-issue focus of the attorneys' work, the reasonableness of the hourly rates, the reasonableness of the time spent, and the time records' detailed descriptions of the tasks performed, combine, under California law, to sufficiently satisfy Huseby's burden.

After a careful review, the court concludes that a reduction for block billing is not warranted. Accordingly, the lodestar calculation of time billed by each attorney multiplied by the number of hours expended is $13,332.

D.    *Application of Factors*

After calculating the lodestar, the trial court "shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [S]ection 1717 award so that it is a reasonable figure." *PLCM*, 22 Cal. 4th at 1095-1096 (quoting *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 77 (1986)). Champlin makes no challenge to Huseby's requested attorney fees under any of the factors noted above. This court does not find any of the factors particularly relevant or determinative, and as such, declines to adjust the lodestar amount in either direction.

E.    *Costs*

Champlin does not contest Huseby's request for $9.35 in photocopy costs. Section 1717 specifically includes costs in the award to the prevailing party where the contract at issue specifies as such. Cal. Civ. Code § 1717(a). Furthermore, the Agreement states, "[T]he prevailing party shall be entitled to receive from the other party reasonable expenses, attorneys' fees, and costs." (Huseby II, Ex. 1 at ¶ 8.) The court concludes that photocopy costs of $9.35 are reasonable for this action.

*Conclusion*

Based on the foregoing, Huseby's Motion for Attorney Fees should be granted. The court recommends awarding Huseby attorney fees and costs in the amount of $13,341.35.

Scheduling Order

The Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **November 21, 2012**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 7th day of November, 2012.

JOHN V. ACOSTA
United States Magistrate Judge